**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER JOHNSON, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>TRINITY COURIERS, INC., *et al*.,<br><br>        Defendants. | Case No. 1:19-cv-00686<br>Bowman, M.J. |

**PLAINTIFFS' UNOPPOSED MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>FINAL APPROVAL OF THE SETTLEMENT AGREEMENT</u>**

:

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 3

II.  PROCEDURAL HISTORY .................................................................................... 3

III.  THE NOTICE PROCESS AND REMAINING PROCESS FOR EFFECTUATING THE
SETTLEMENT AGREEMENT ............................................................................... 4

    A.  The Notice Process Has Been Effectuated Pursuant to the Terms of the Settlement
Agreement ..................................................................................................... 4

    B.  Distribution of the Gross Settlement Amount ........................................................ 6

    C.  Release Of Claims ........................................................................................... 9

IV.  DISCUSSION ..................................................................................................... 9

    A.  Applicable Legal Standards ............................................................................... 9

        1.  Legal Standard for Approval of FLSA Settlements .................................... 9

        2.  Legal Standard for Approval of Rule 23 Class Action Settlements ......... 10

    B.  The Parties' Settlement Warrants Final Approval ................................................ 11

        1.  The Proposed Settlement Terms Are Fair, Reasonable, And Adequate In
Relation To The Strength Of Plaintiffs' Case And Risks And Expense Of
Further Class Litigation In This *Bona Fide* Dispute................................. 11

        2.  There Is No Risk of Fraud Or Collusion In The Settlement ..................... 13

        3.  The Lawsuit Is At An Appropriate Point For Settlement ......................... 13

        4.  The Likelihood of Success On The Merits Weighs In Favor of Approval 14

        5.  The Opinions of Class Counsel Support Approval of The Settlement ..... 15

        6.  The Settlement Class's Response Supports The Settlement..................... 16

        7.  Approving This Settlement Is In The Public Interest ............................... 16

        8.  The Additional Service Awards to the Named Plaintiffs are Justified and
Should be Approved .......................................................................... 16

    C.  The Proposed Settlement Furthers the Purpose of the FLSA .............................. 18

    D.  The Court Should Finally Certify the Settlement Classes Under Fed. R. Civ. P. 23
............................................................................................................... 19

1. The Settlement Classes Are Sufficiently Numerous.................................. 20

2. The Settlement Classes Each Seek Resolution of Common Questions.... 20

3. The Claims of the Named Plaintiffs are Typical of the Settlement Class  21

4. Class Counsel and Plaintiffs Are Adequate to Represent the Settlement Class........................................................................................................... 21

5. The Settlement Class Satisfies the Predominance and Superiority Requirements of Fed. R. Civ. P. 23(b)(3)................................................. 22

E. The Court Should Certify the Settlement Collective Pursuant to 29 U.S.C. §216(b) for Settlement Purposes ...................................................................................... 22

F. The Notice Provisions Were Followed and Provided Adequate Notice to the Class that Satisfies Due Process ............................................................................................ 23

G. The Request for Approval of Attorneys' Fees and Costs Should Be Granted...... 23

1. The Fee Shifting Provisions of the FLSA and State Wage Laws Provide For The Award of Attorneys' Fees .......................................................... 23

2. The Value of Benefits Rendered to the Class Supports the Requested Fee ...................................................................................................................... 25

3. The Fee Requested Provides Adequate Incentive to Undertake this Representation for the Benefit of Others ................................................. 26

4. Class Counsel Undertook this Representation on a Contingent Basis...... 27

5. The Value of the Services on an Hourly Basis Supports the Fee Requested ...................................................................................................................... 28

6. The Complexity of the Litigation and the Class Counsel's Professional Skill and Efficiency in This Case Supports the Requested Fee ............... 29

7. The Response of Settlement Class Members Supports The Requested Fee ...................................................................................................................... 30

8. The Awards In Similar Cases Supports The Requested Fee.................... 30

H. Class Counsel's Costs Should Be Approved ...................................................... 32

V. CONCLUSION................................................................................................................ 32

## I.  INTRODUCTION

This class and collective wage and hour lawsuit has been settled, and Plaintiffs Christopher Johnson, Tatiana Mance, Christopher Lymon, Marcus Johnson, Veronica Renda, John Foster, and Yeniel Baez-Sanchez ("Plaintiffs") respectfully submit Plaintiffs' Unopposed Motion for Final Approval of the Settlement Agreement. The Court granted preliminary approval to the settlement on July 27, 2022, finding that the proposed settlement is fair and reasonable, and set a final approval hearing for November 16, 2022. (ECF Nos. 46, 47).

Notice has been issued to the Settlement Class Members pursuant to the terms of the Settlement Agreement.[1] As of the November 1, 2022, Notice Deadline, there are zero[2] objections and zero requests for exclusion. For the reasons submitted herein, the settlement should now receive final approval so that the agreed settlement funds can promptly be distributed to the Settlement Class Members. Accordingly, Plaintiffs request that the Court issue an Order granting final approval to the Settlement along the terms set forth in the proposed Order, and Plaintiffs have enclosed a proposed Order with this filing. Defendants do not oppose this Motion.

## II.  PROCEDURAL HISTORY

Plaintiffs set forth the procedural history of this case as well as the terms of the Settlement in their Unopposed Motion for Preliminary Approval (ECF No. 39), which they incorporate herein by reference.

---

[1]  The terms of the Parties' settlement are set forth in a Settlement Agreement (the "Settlement Agreement" or "Agreement") (ECF No. 38-2).

[2]  Counsel for Amazon received a submission from a Settlement Class Member titled "Objecting to the Settlement Class," but the substance of the "Objection" states that the individual "wishes to participate in the settlement class. [sic] Because, I did not get paid for hours worked, including overtime compensation by Trinity Couriers." *See* Declaration of Christopher Ramsey, Ex A. Plaintiffs' Counsel reached out to this individual for clarification via telephone and email, but have not received a response. *See* Declaration of Sarah Schalman-Bergen ¶ 45.

III.    **THE NOTICE PROCESS AND REMAINING PROCESS FOR EFFECTUATING THE SETTLEMENT AGREEMENT**

   A.    **The Notice Process Has Been Effectuated Pursuant to the Terms of the Settlement Agreement**

Following the Court's Order granting Preliminary Approval, the Parties worked to effectuate the notice provisions of the settlement. On or about August 5, 2022, Defendant sent required CAFA Notices to the appropriate state authorities. *See* Declaration of Christopher Ramsey at ¶ 2. The parties agreed that Lichten & Liss-Riordan, PC ("LLR") would administer the notice in this matter.[3] Declaration of Stephen Kirkpatrick ("Kirkpatrick Decl.") at ¶ 3.

Following the Court's Preliminary Approval Order, Defendants' counsel provided LLR with a file containing names, taxpayer identification numbers, known mailing addresses, email addresses, and work-week data for the individuals who had been identified as Settlement Class Members in this Action ("Class List"). *Id.* at ¶ 4. After analyzing the Class List and consolidating duplicate entries representing the same individuals, LLR and Defendants' counsel identified an updated total of 3,353 Settlement Class Members (3,277 in the Trinity Couriers Settlement Class and 76 in the Seven A Service Settlement Class). *Id.*

LLR performed calculations of the settlement shares per the terms in the Settlement Agreement. *Id.* at ¶ 5. Defendants' counsel and Plaintiffs' counsel reviewed and approved the estimated minimum settlement shares for each Settlement Class Member. *Id.*

LLR established a website at www.Trinity7AOT.com that has links to the notice, motions for approval and other documents in the case, and which listed the date of approval hearing, as well as other information helpful to Settlement Class Members. *Id.* at ¶ 6. LLR also established a

---

[3]    LLR has a dedicated settlement administration team that handles administration of class and collective action settlements. LLR's settlement department handles notice mailing, re-mailing and tracking of undeliverable notices, collection of claim forms, calculation of settlement shares, and all other aspects of settlement administration. Kirkpatrick Decl. at ¶ 2.

protocol and phone number for Settlement Class Members to contact our office with any questions or concerns. *Id.* at 7.

On September 2, 2022, LLR, by means of a third-party mailing service, caused the Notice of Collective and Class Action Settlement to be printed and mailed to all 3,353 Settlement Class Members. *Id.* at 9. The data file provided to LLR listed multiple addresses for several individuals, resulting in a total of 3,484 notices packets being sent. *Id.*; *see also id.* Ex. A (copies of the final Notice of Collective and Class Action Settlement).

On September 2, 2022, LLR also sent an e-mail notice via MailChimp to 2,061 Settlement Class Members for whom valid e-mail addresses had been provided. *Id.* at ¶ 10. According to MailChimp, 2,019 of these email notices were successfully delivered, which represents approximately 98 percent of the total. *Id.*

LLR received 1,334 notices returned as undeliverable by the Postal Service. *Id.* at ¶ 11. Through public records databases, as well as a supplemental file of address data provided to LLR by Defendants' counsel, LLR located updated addresses for 554 individuals and re-mailed notices to those addresses. *Id.* Where possible, LLR has sent supplemental emails to these Settlement Class Members to obtain updated contact information and mailing addresses. *Id.* at ¶ 12.

LLR was responsible for receiving any objections to the settlement or request for exclusion. *Id.* at ¶ 13. The Notice Deadline to receive requests for exclusion or objection was November 1, 2022. *Id.* No exclusion requests have been received to date. *Id.* at ¶ 14. No objections to the settlement were received by LLR to date. *Id.* at ¶ 15. Counsel for Defendant received one letter from a Settlement Class Member Sara Traore, but, as stated above in footnote 2, the substance of it does not appear to be an objection to the settlement. *Id.* at ¶ 15; Declaration of Christopher Ramsey, Ex. A. Plaintiffs' Counsel has attempted to reach this individual, but has not received a

response.  Schalman-Bergen Decl. at ¶ 45.

Three Settlement Class Members indicated that they wish to dispute their estimated settlement share; one via e-mail and two via telephone. Kirkpatrick Decl. at ¶ 16. These Settlement Class Members were instructed to provide LLR with further documentation in support of their dispute, including tax forms and pay stubs. *Id.* To date, only one of these individuals provided the requested documentation which we will result in a small increase to his share. *Id.* Two additional individuals contacted LLR, stating that they worked for Trinity Couriers and should receive payment under the settlement. *Id.* at ¶ 17.  One individual provided documentation and has been added to the Settlement Collective, which brings the total number of Settlement Collective members to 3,354.  *Id.* The other individual did not work as a Delivery Associate and is therefore not part of the Settlement Collective.  *Id.*

The Parties have retained settlement administrator Analytics LLC to finalize the administration of this settlement, including to send out checks and coordinate tax reporting obligations.  *Id.* at ¶ 18. Pursuant to the terms of the Settlement Agreement, these administration costs will be paid by Defendants and not form the Gross Settlement Amount. Following final approval of the settlement, LLR will work with Analytics to ensure they have all information necessary to administer the settlement. *Id.*

### B.    Distribution of the Gross Settlement Amount

Pursuant to the Settlement Agreement, within forty-five (45) days after the Effective Date[4], the Gross Settlement Amount ("GSA") of $3,850,000.00, in addition to sufficient funds attributable to the employer's share of payroll taxes and administration costs, shall be transferred

---

[4]    Effective Date means the first business day after the Court's Final Approval Order becomes Final (*i.e.*, 30 days after the Final Approval Order is issued if there is no appeal).  Settlement Agreement, ¶ 14(h).

to a Qualified Settlement Fund ("QSF") to be administered by Analytics, LLC, an experienced third-party claims administration company. Settlement Agreement, ¶¶ 14(w), 27(a); Kirkpatrick Decl. at ¶ 18.

The $3,850,000.00 GSA is the total, all-inclusive, non-reversionary amount to settle the collective and class wage claims. Of the GSA, the sum of Three Million Seven Hundred Fifty Thousand Dollars ($3,750,000.00), shall be attributable to Trinity Couriers Relevant Time Period, and One Hundred Thousand Dollars ($100,000.00), shall be attributable to the Seven A Service Relevant Time Period. The GSA also includes (subject to Court approval) Service Awards to the seven representative Plaintiffs, attorneys' fees in an amount of up to one-third of the Gross Settlement Amount ($1,283,333,33), and reasonable out-of-pocket costs not to exceed $15,000 (together, "Fee and Cost Payment") to compensate Class Counsel for all work performed as of the date of the Settlement, as well as all work remaining to be performed, such as securing Court approval of the Agreement, ensuring that the Agreement is fairly administered and implemented, and obtaining final dismissal of the Action. Agreement ¶¶ 14(j), 28(b).[5]

After deducting Service Awards for the Named Plaintiffs and the attorneys' fees and costs, the entirety of the remaining Net Settlement Amount will be distributed to Settlement Class and Collective Members. Under the Agreement, all Eligible Class Members will receive a Settlement Award without the need to submit a claim form. Agreement ¶ 30.[6] Under the proposed Plan of Allocation, all Eligible Settlement Class Members will receive a *minimum* Settlement Award of

---

[5]      The Fee and Cost Payment shall be deducted on a *pro rata* basis from the Trinity Couriers GSA and the Seven A Service GSA. *Id.*

[6]      A "Settlement Award" means the payment that each Eligible Class Member shall be entitled to receive pursuant to the terms of the Settlement Agreement. "Eligible Class Member" means (i) Plaintiffs; (ii) Opt-In Plaintiffs; (iii) Settlement Class Members who do not exclude themselves from the Settlement; and (iv) Settlement Collective Members. *See* Settlement Agreement ¶ 14(g), (x).

$50 in addition to a *pro rata* share of the respective Net Settlement Amount, which shall be calculated as follows:

i. For each workweek during which the Eligible Settlement Class Member worked more than four (4) or more days during the Trinity Couriers Relevant Time Period and was paid by Trinity Couriers, the Eligible Settlement Class Member shall receive one (1) settlement share.

ii. For each workweek during which the Eligible Settlement Class Member worked more than four (4) or more days during the Seven A Service Relevant Time Period and was paid by Seven A Service, the Eligible Settlement Class Member shall receive one (1) settlement share.

iii. The total number of settlement shares for all Eligible Settlement Class Members in the Trinity Couriers Relevant Time Period will be added together and the resulting sum will be divided into the Net Settlement Amount attributable to the Trinity Couriers Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Eligible Settlement Class Member's number of settlement shares to determine the Eligible Settlement Class Member's Settlement Award.

iv. The total number of settlement shares for all Eligible Settlement Class Members in the Seven A Service Relevant Time Period will be added together and the resulting sum will be divided into the Net Settlement Amount attributable to the Seven A Service Settlement Amount to reach a per share dollar figure. That figure will then be multiplied by each Eligible Class Member's number of settlement shares to determine the Eligible Settlement Class Member's Settlement Award.

*Id.* at ¶ 31. All Settlement Award determinations shall be based on Amazon's delivery data for Settlement Class Members. *Id.* ¶ 33.[7]

All Settlement Award checks issued by the third-party Settlement Administrator (Analytics) shall remain valid and negotiable for 180 days from the date of their issuance, and may thereafter automatically be cancelled if not cashed within that time. *Id.* ¶ 38. If, at the conclusion

---

[7] The Settlement Notice mailed and emailed to Settlement Class and Collective Members stated the estimated minimum payment the Class and/or Collective Member is expected to receive assuming full participation of all Settlement Class Members. When calculating the minimum settlement shares to be reported in the Notice, Class Counsel created a holdback fund of $25,000 to be used in the event of disputes or discrepancies that arise during the Notice Period; any amounts not claimed from the holdback fund will be returned to the Net Settlement Amount for distribution prior to mailing any settlement award checks. Settlement Agreement ¶ 32.

of the 180-day check void period, there are any monies remaining in the QSF, those monies shall be paid to the Parties' agreed upon *cy pres* recipient, Ohio Access to Justice Foundation,[8] subject to the Court's approval in the Final Approval Order. *Id.* ¶ 40. There will be no reversion of any portion of the GSA to Defendants at any time after the Effective Date. *Id.* ¶ 27(a).

### C. Release Of Claims

Upon the Effective Date, all Settlement Class Members will release Defendants and all Released Parties from any and all claims that were or could have been asserted in the FAC based on the facts alleged between January 23, 2017, and October 2, 2018 (for Trinity Couriers) and between November 8, 2017, and April 27, 2019 (for Seven A Service) for alleged unpaid wages, overtime compensation, liquidated or other damages, unpaid costs, restitution or other compensation or relief arising under Ohio, Missouri, and Colorado wage and hour laws, city ordinances, or state common law claims (including unjust enrichment or quantum merit). *Id.* ¶ 16. Settlement Class Members will release their FLSA claims against Defendants *only* when they become Eligible Class Members (*i.e.,* they do not opt out) and if they sign, cash or deposit their Settlement Award check. *Id.* ¶ 17. As additional consideration, Named Plaintiffs will provide a broader release of their claims upon Final Approval of the Settlement. *Id.* ¶ 15.

## IV. DISCUSSION

### A. Applicable Legal Standards

#### 1. Legal Standard for Approval of FLSA Settlements

When employees bring a private action under the FLSA, and present to the district court a proposed settlement pursuant to Section 216(b), the district court may approve the settlement

---

[8]     The Ohio Access to Justice Foundation is a "statewide nonprofit organization committed to funding civil legal aid and access to justice initiatives to help ensure fairness and access to justice for low-income Ohioans." *See* Ohio Justice Foundation, https://www.ohiojusticefoundation.org/about-us/overview/.

where "there is a *bona fide* dispute between the parties as to the employer's liability under the FLSA." *Kritzer v. Safelite Sols., LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at \*5 (S.D. Ohio May 30, 2012). Courts also consider, as applicable, "the risk of fraud or collusion, the complexity, expense, and likely duration of the litigation, the amount of discovery completed, the likelihood of success on the merits, and the public interest in settlement." *Weiner v. Bainbridge Twp. Police Dep't*, No. 1:22-CV-255, 2022 WL 1120391, at \*2 (N.D. Ohio Apr. 13, 2022) (citing *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007)).

> **2.     Legal Standard for Approval of Rule 23 Class Action Settlements**

This case is also brought as a class action pursuant to FED. R. CIV. P. 23. The Sixth Circuit has explained that, "[b]efore approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'" *UAW v. GMC*, 497 F.3d 615, 631 (6th Cir. 2007) (quoting FED. R. CIV. P. 23(e)(1)(A)(C)). The circuit court has established "[s]everal factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *UAW*, 497 F.3d at 631 (citing *Granada Invest., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)). The Sixth Circuit reaffirmed the *UAW* factors as the standard for considering the fairness of a class action settlement under Rule 23. *See Does 1-2 v. Deja Vu Servs., Inc.*, 925 F.3d 886 (6th Cir. 2019).  While these factors are helpful in guiding the analysis, the "fairness of each settlement turns in large part on the *bona fides* of the parties' legal dispute," that is, whether there are real issues and risks in the case that would lead each party to opt toward settlement. *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983). The Settlement in this case falls well within the range of approval, because it meets each of the requirements of fairness and is a fair and reasonable compromise of a *bona fide* dispute.

10

**B.    The Parties' Settlement Warrants Final Approval**

**1.    The Proposed Settlement Terms Are Fair, Reasonable, And Adequate In Relation To The Strength Of Plaintiffs' Case And Risks And Expense Of Further Class Litigation In This *Bona Fide* Dispute**

In approving a settlement, the Court must ultimately "determine whether [the settlement] falls within the range of reasonableness, not whether it is the most favorable possible result in the litigation." *In re Delphi Corp. Sec., Derivatives & "ERISA" Litig.*, 248 F.R.D. 483, 486 n. 2 (E.D. Mich. 2008).

In this case, Plaintiffs believe that the proposed cash recovery represents a strong result both in absolute terms, and especially when balanced against the multitude of risks to establishing liability and recovering damages. *Id.* at 496. Plaintiffs engaged in an extensive analysis of the data provided and performed damages calculations using various assumptions about the amount of time in each workweek that appeared in the Rabbit data, and the rate of overtime they would have been owed if Plaintiffs prevailed on all claims. Ultimately, the Settlement Amount agreed upon represents a compromise amount that, for DAs paid by Trinity Couriers totals more than approximately 4.6 times Plaintiffs' lowest calculations utilizing the legal and factual assumptions Defendants argued were reasonable and proper, and 6.1 times Plaintiffs' lowest calculations for Delivery Associates paid by Seven A Service. Schalman-Bergen Decl. ¶ 34.[9] This will result in significant amounts of compensation being paid to the DAs. *Id.*

Class Counsel believe that the Settlement is an excellent result for the Eligible Class Members, especially considering the risks of continued litigation, and considering that the Trinity Couriers entities are no longer in operation. *Id.* ¶ 35. A trial on the merits would involve significant

---

[9]    For ease of review, the Declaration of Sarah Schalman-Bergen submitted with the instant Motion incorporates the Declaration of Sarah Schalman-Bergen submitted in connection with Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement Agreement and utilizes the same numbering.

risks for Plaintiffs as to both liability and damages, including Plaintiffs' burden to demonstrate that Amazon is a joint employer. While Plaintiffs believe the case was very strong, any verdict at trial could also be delayed based on appeals by Defendants.

The Chief Judge of this Court recently noted that "wage and hour class/collective actions are inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them." *Clark v. Pizza Baker, Inc.*, No. 2:18-cv-157, 2022 WL 16554651, at *4 (S.D. Ohio Oct. 31, 2022) ("This Court also appreciates that providing relief to class members now will eliminate any uncertainty or delay."). Given the vagaries of litigation, Class Counsel's recommendation to "take a bird in the hand instead of a prospective flock in the bush" is well founded. *Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-CV-00018, 2006 WL 3359482, at *3 (N.D. Ohio Nov. 17, 2006) (quoting *Brown v. Blue Cross and Blue Sheild of Michigan, Inc.*, 167 F.R.D. 40, 44 (E.D. Mich. 1996)).

The settlement here meets the test for final approval because: (1) the settlement provides the Class with substantial relief compared to the uncertain potential relief possibly through continued litigation; (2) this is a case which would require a significant expense and time to litigate through a trial; (3) class counsel who are extremely experienced in this type of litigation believe the settlement is in the best interest of the class; (4) the Parties have engaged in substantial discovery; (5) the Parties engaged in good-faith, non-collusive, arms' length negotiations that gave no reason to doubt the settlement's fairness and (6) the settlement serves the public interest and judicial efficiency by resolving this dispute now. Given the substantial monetary settlement that was negotiated, continuing the litigation of this case and exposing the case to those risks is not warranted. Thus, as this Court already found when granting preliminary approval to the Settlement, the *UAW* factors strongly support final approval of this Settlement.

### 2.      There Is No Risk of Fraud Or Collusion In The Settlement

"Courts presume the absence of fraud or collusion unless there is evidence to the contrary."

*Fields v. KTH Parts Indus., Inc.*, 2022 WL 3223379, at *4 (S.D. Ohio Aug. 9, 2022).  There can

be no doubt that in reaching this substantial Settlement, there has not been, and could not be, the

slightest suggestion of collusion, and no one has objected to the Settlement or otherwise "made

the case that the agreement is a product of collusion." *Moulton v. U.S. Steel Corp.*, 581 F.3d 344,

351 (6th Cir. 2009) (citing *Williams*, 720 F.2d at 921); *see also Clark*, 2022 WL 16554651, at *4

("The participation of an independent mediator in settlement negotiations virtually [e]nsures that

the negotiations were conducted at arm's length and without collusion between the parties.)

(quotations omitted).

The Settlement in this case was the result of significant investigation, discovery, and arm's-

length negotiations that lasted over two years. Schalman-Bergen Decl. ¶¶ 25, 29. The proposed

Settlement was reached only after an extensive ADR process that consisted of four in-person

mediation sessions in Chicago, Illinois, which were overseen by experienced mediator, Dennis

Clifford, Esq, which included additional extensive arm's-length negotiations. *Id*.

### 3.      The Lawsuit Is At An Appropriate Point For Settlement

The next two factors: the complexity, expense, and likely duration of the litigation, and the

amount of discovery conducted, also support settlement. *See UAW*, 497 F.3d at 631. As previously

discussed, the parties engaged in an extensive ADR process in connection with engaging in arm's-

length settlement negotiations. The Parties exchanged and analyzed significant amounts of data

and information, including the Court ordering the unsealing of a related settlement entered into by

Trinity Couriers. *See* ECF No. 17. In short, there has been sufficient investigation and discovery

conducted in this matter to allow counsel and the Court to act intelligently concerning the settlement of the claims. Schalman-Bergen Decl. ¶¶ 21-29.

Additionally, if a settlement had not been reached, it is likely that the litigation would have moved to trial and potential appeals related liability and damages issues (or other issues) prior to and after trial. The state of the proceedings supports final approval of the Settlement.

### 4. The Likelihood of Success On The Merits Weighs In Favor of Approval

"The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig., 72*6 F.2d 1075, 1086 (6th Cir. 1984). As discussed above, absent settlement, the parties would have proceeded to trial and potential appeals. While Plaintiffs believe they will be meritorious in their claims, they recognize the inherent risk of litigation and trial. *See, e.g., Foster v. Nationwide Mut. Ins. Co.,* 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA); *Henry v. Quicken Loans, Inc.,* 698 F.3d 897 (6th Cir. 2012) (affirming a jury verdict, reached after eight years of litigation, that mortgage bankers were properly classified as exempt from the overtime pay requirements of the FLSA).

The settlement provides relief to Plaintiffs and Settlement Class Members and eliminates the risks that the parties would otherwise bear if this litigation were to continue to trial and potential appeals. Further, if Plaintiffs had not prevailed in holding Amazon liable as a joint employer, it is not clear that the remaining Defendants would have been able to satisfy any judgment, even if Plaintiffs had prevailed on all claims. The possibility that the class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992). Where a proposed

settlement provides for relief now, not perhaps some years down the road, it is proper for the parties "to take the bird in the hand instead of a prospective flock in the bush" *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974). *Accord Fields*, 2022 WL 3223379, at *5 (finding that "[s]ettlement eliminates these [litigation] risks, and participating Class Members are guaranteed to receive significant recovery now rather than possibly receiving a recovery years from now (or not ever receiving any recovery)").

The requisite elements of risk facing the likelihood of success all exist here, and final approval should be granted.

### 5. The Opinions of Class Counsel Support Approval of The Settlement

Class Counsel are experienced and respected class action litigators. *See* Schalman-Bergen Decl. ¶¶ 4-20. Based on Class Counsel's knowledge and expertise in this area of law, Class Counsel believes this Settlement will provide a substantial benefit to the Settlement Classes. *Id.* ¶¶ 33, 35. *See Kritzer v. Safelite Sols., LLC*, No. 2:10-CV-0729, 2012 WL 1945144, at *7 (S.D. Ohio May 30, 2012) (Frost, J.) ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.").[10] The proposed Agreement is the product of factual and legal research, analysis, and arm's-length negotiations.

Counsel for both sides are highly experienced in wage and hour class action litigation. In addition, the settlement was overseen by a neutral mediator. The adversarial nature of the negotiations in ADR illustrate that this case was resolved and settled only after sufficient arm's-

---

[10]     *See also Clark*, 2022 WL 16554651, at *5 ("The Court gives great weight to the beliefs of experienced counsel."); *Smith v. Ajax Magnethermic Corp.,* 2007 WL 3355080, at *5 (N.D. Ohio Nov. 7, 2007) ("The Sixth Circuit has held that, in the context of approving class action settlements, the Court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.'") (quoting *Williams v. Vukovich,* 720 F.2d 909, 922-23 (6th Cir.1983); *UAW v. Gen. Motors Corp.*, No. 05 Civ. 73991, 2006 WL 891151, at *18 (E.D. Mich. Mar. 31, 2006) (holding in an FLSA case that "the endorsement of the Parties' counsel is entitled to significant weight, and supports the fairness of the class settlement").

length bargaining. The Opinions of Class Counsel and the procedure for resolution support approval of the Settlement.

### 6. The Settlement Class's Response Supports The Settlement

Finally, the Settlement Class Members' response to the Settlement supports final approval. With the deadline for making objections and opting out of the Settlement having passed, there have been **zero objections and zero requests for exclusion** to the proposed Settlement. *See* Kirkpatrick Decl. ¶¶ 14-15. This overwhelmingly positive response from the Settlement Class demonstrates the fairness and adequacy of the Settlement's terms. Given the Court's preliminary approval and the complete absence of any objections by Class Members, final approval of the settlement is warranted. *See Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *4 (S.D. Ohio July 11, 2014) (holding overwhelmingly positive reaction to the settlement supports approval).

### 7. Approving This Settlement Is In The Public Interest

"Public policy generally favors settlement of class action lawsuits." *Swigart*, 2014 WL 3447947, at*4 (citing *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007)); *Whitford v. First Nationwide Bank,* 147 F.R.D. 135, 143 (W.D. Ky. 1992)). *See also, e.g., Satterly v. Airstream, Inc.*, No. 3:19-CV-107, 2020 WL 6536342, at *7 (S.D. Ohio Sept. 25, 2020) ("The public interest favors the settlement of class action litigation."). Here, the Settlement provides relief for all Eligible Class Members, avoids further litigation in this complex class and collective action case, and frees the Court's judicial resources. This factor supports granting final approval.

### 8. The Additional Service Awards to the Named Plaintiffs are Justified and Should be Approved

"[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation." *Dillworth*

*v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (internal quotations omitted). Pursuant to the Agreement, and subject to Court approval, the Named Plaintiffs will receive service awards in the amount of Ten Thousand Dollars ($10,000.00) each for their efforts in bringing and prosecuting this matter, and in addition, for their broader release against Defendants. *See* Agreement ¶¶ 14(v); 21(a). These amounts are reasonable and consistent with awards approved in this District for similar litigation. *See, e.g., Swigart v. Fifth Third Bank*, No. 11-cv-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (approving incentive award of $10,000 to each named representative); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (approving incentive award of $12,500); *Chrismon v. Meadow Greens Pizza*, No. 5:19-cv-155BO, 2020 WL 3790866, at *6 (E.D.N.C. Jul. 7, 2020) (approving incentive award of $10,000); *see also, e.g., Satterly*, 2020 WL 6536342, at *9 (approving requested service awards ranging from $2,500 to $15,000).

Here, the proposed additional payments are justified by the benefits that Plaintiffs' diligent efforts have brought to the Settlement Class Members. Plaintiffs took the significant risk of coming forward to represent the interests of their fellow employees. Schalman-Bergen Decl. ¶ 37. They worked with Class Counsel, providing information about their employment, about Defendant's policies and practices, and about the allegations in this lawsuit. They were actively involved throughout this matter. *Id*. They are also providing a far broader release of claims than the other Settlement Class Members, through a general release of claims that provides Defendants with bargained for complete peace. *Id*.; Agreement ¶ 15.

Courts have routinely recognized the importance of such awards in wage and hour cases of this nature. Plaintiffs took a very real risk in representing the interests of their fellow employees, including risking their reputation in the community and in their field of employment to participate

in this case on behalf of the Settlement Class. *Id*. ¶ 37. The risks assumed and benefit provided to the Settlement Class support the requested service awards.[11] The service award payments of $10,000 each to Named Plaintiffs should be finally approved.

### C.     The Proposed Settlement Furthers the Purpose of the FLSA

The Agreement contains no provisions that would be contrary to the purposes of the FLSA or frustrate the implementation of the FLSA in the workplace. The Agreement furthers the purposes of the FLSA by providing Settlement Collective Members, who earn relatively low wages, with substantial recovery towards their alleged unpaid overtime that they may have otherwise been unable to recover. *See* 29 U.S.C. § 202 (congressional declaration of policy); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945) ("The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency …").

The Settlement's release provisions are limited to wage and hour claims that occurred during the Relevant Time Periods. Settlement Collective Members will not release any FLSA claims against Defendants unless they sign, cash or deposit their Settlement Award check, and the

---

[11]     *See, e.g.*, *Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144, at *26 (S.D. Ohio May 30, 2012) (reasonable service awards "are common in class action settlement[s] and [are] routinely approved for the simple reason 'to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.") (quoting *Rotuna v. West Customer Mgmt. Group, LLC*, No. 4:09cv1608, 2010 WL 2490989, at *3 (N.D. Ohio June 15, 2010). *See, e.g.*, *Castillo v. Noodles & Co.*, 2016 WL 7451626, at *2 (N.D. Ill. Dec. 23, 2016) ("Plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny… This is especially true in employment litigation."); *Sand v. Greenberg*, 2011 WL 7842602, at *3 (S.D.N.Y. Oct. 6, 2011) (approving service awards in FLSA case as reasonable and finding that Plaintiffs "took risks by putting their names on this lawsuit," including the risk of "blacklisting and other more subtle forms of retaliation"); *Craig v. Rite Aid Corp.*, 2013 WL 84928, at *13 (M.D. Pa. Jan. 7, 2013), appeal dismissed (3d Cir. Feb. 20, 2013) ("[N]amed Plaintiffs in FLSA or state wage and hour claims are often retaliated against in the industry as a result of their obvious participation in such litigation.").

settlement check will contain clear release language on the back of the check. *See* Settlement Agreement ¶¶15-18. The Settlement is non-reversionary, and all Eligible Class Members will automatically receive a settlement check for wages without the need to submit a Claim Form. *Id.* ¶¶ 27(a), 30. Because the settlement facilitates the FLSA and is a fair and reasonable resolution of a *bona fide* dispute, it should be approved as reasonable.

### D. The Court Should Finally Certify the Settlement Classes Under Fed. R. Civ. P. 23

Plaintiffs ask that the Court finally certify the Settlement Classes. In order to obtain class certification, a party must show that all four prerequisites of Rule 23(a) are met and that the case qualifies as at least one of the matters identified in Rule 23(b). *See Green v. Dressman Benzinger Lavelle, PSC*, No. 1:14-CV-00142-SJD, 2014 WL 4816698, at *2 (S.D. Ohio Sept. 18, 2014). A case may be certified as a class action under Rule 23 when:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). These four threshold requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation," respectively. *See, e.g.*, *Kinder v. Meredith Corp.*, No. 14-CR-11284, 2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016). Federal Rule of Civil Procedure 23(b)(3) permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). The Manual for Complex Litigation (the "Manual") notes the propriety of certifying a class solely for purposes of settlement. MANUAL FOR COMPLEX LITIGATION § 21.132 (4th ed. 2013).

The Court preliminarily found that certification was appropriate, and there is no reason to deviate from that prior finding. As discussed below, the Court should finally find that all of the requirements for class certification are satisfied for settlement purposes. The Parties have stipulated that, for the settlement purposes only, class certification pursuant to Fed. R. Civ. P. 23(a) and (b)(3) are met with respect to the Settlement Classes.

### 1. The Settlement Classes Are Sufficiently Numerous

To meet the numerosity requirement of Fed. R. Civ. P. 23(a)(1), the class size only need be large enough that it makes joinder impracticable. Fed. R. Civ. P. 23(a)(1). "Often, a class of 40 or more members is sufficient to meet the numerosity requirement." *Castillo v. Morales, Inc.*, 302 F.R.D. 480, 487 (S.D. Ohio 2014). The numerosity requirement is satisfied because, of the approximately 3,354 Settlement Collective Members, there are more than 500 DAs who are Trinity Couriers Settlement Class Members, and there are 76 DAs who are Seven A Service Settlement Class Members. Schalman-Bergen Decl. ¶ 38.

### 2. The Settlement Classes Each Seek Resolution of Common Questions

Fed. R. Civ. P. 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." The class members' claims must depend upon a common contention that is capable of class-wide resolution. *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013). The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied if the named Plaintiffs share at least one question of fact or law with the grievances of the prospective class. *Id*. at 253 ("We start from the premise that there need be only one common question to certify a class."); *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 237 (N.D. Ohio 2014) ("Plaintiffs need identify only one common question of law or fact for purposes of 'commonality.'").

Plaintiffs' and the Settlement Class Members' claims arise from Defendants' alleged common pay policies. The alleged common issues include, for example: (1) whether Defendants paid Settlement Class Members on a day rate pay plan; (2) whether Settlement Class Members were entitled to overtime compensation for their hours worked; (3) whether Settlement Class Members were similarly denied compensation for all hours worked; and (4) whether Amazon is a joint employer of Settlement Class Members. Amazon denies these claims and also raised the same joint employer defense as to *all* DAs, further raising a common question. These sample common questions of law and fact, which Plaintiffs contend apply uniformly to all members of the Settlement Classes, are sufficient to satisfy the commonality requirement.

### 3. The Claims of the Named Plaintiffs are Typical of the Settlement Class

The typicality requirement of Fed R. Civ. P. 23(a)(3) is satisfied for purposes of **finally** approving the settlement, because Plaintiffs possess the same interest and suffered the same alleged injury as the absent class members. *See Smith v. Ohio Dep't of Rehab. & Correction*, No. 2:08-CV-15, 2012 WL 1440254, at *4 (S.D. Ohio Apr. 26, 2012) ("A 'typical' claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and [must be] based on the same legal theory' [but they] need not always involve the same facts or law, provided there is a common element of fact or law.") (quoting *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir.2007)). Plaintiffs' claims for unpaid-overtime compensation are typical of the claims of the Settlement Class.

### 4. Class Counsel and Plaintiffs Are Adequate to Represent the Settlement Class

To meet the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4), Plaintiffs must show: 1) that the potential Named Plaintiffs have common interests with unnamed class

members and 2) that he or she will vigorously prosecute the interests of the class through qualified counsel. *Smith*, 2012 WL 1440254, at *5.

The adequacy of representation requirement is met here because Plaintiffs have the same interests as the Settlement Class Members. Plaintiffs have and will continue to aggressively and competently assert the interests of the Settlement Class, and Plaintiffs' counsel are skilled and experienced in wage and hour class action litigation. Schalman-Bergen Decl. ¶¶ 4-20.

### 5. The Settlement Class Satisfies the Predominance and Superiority Requirements of Fed. R. Civ. P. 23(b)(3)

Under Fed. R. Civ. P. 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

For the reasons discussed above, the Settlement Class satisfies the predominance requirement. In addition, allowing the Settlement Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court. It is also superior to the alternative of leaving these important labor rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis. Accordingly, Plaintiffs respectfully request that the Court finally certify the Settlement Class for settlement purposes only.

### E. The Court Should Certify the Settlement Collective Pursuant to 29 U.S.C. §216(b) for Settlement Purposes

With respect to the FLSA claims in the Action, Plaintiffs request that the Court finally certify the proposed members of the Settlement Collective pursuant to 29 U.S.C. § 216(b). The standard for FLSA certification "does not import the more stringent criteria for class certification under Fed. R. Civ. P. 23 and it is also less stringent than [the] Rule 20(a) requirement that claims

arise out of the same action or occurrence' for joinder to be proper[.]" *Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 765 (N.D. Ohio 2015) (quoting *O'Brien v. Ed Donnelly Enter., Inc.,* 575 F.3d 567, 584 (6th Cir.2009), abrogated on other grounds by *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). Because, as discussed above, the more stringent requirements of Rule 23(a) and (b)(3) have been met, the Court should find that the requirements for certification of the Settlement Collective pursuant to 29 U.S.C. § 216(b) are also satisfied.

> **F.     The Notice Provisions Were Followed and Provided Adequate Notice to the Class that Satisfies Due Process**

The U.S. Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the Notice and manner of distribution negotiated and agreed upon by the parties was "the best notice practicable," as required under Fed. R. Civ. P. 23(c)(2)(B). As described above, the Notice provisions of the Settlement Agreement were all followed. *See generally* Kirkpatrick Decl. All Eligible Class Members will receive a settlement check without the need to submit a claim form. Accordingly, the Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. CONTE & NEWBERG at §§ 8.21 and 8.39; MANUAL FOR COMPLEX LITIG. at § 21.311 and 21.312.

> **G.     The Request for Approval of Attorneys' Fees and Costs Should Be Granted**

>> **1.     The Fee Shifting Provisions of the FLSA and State Wage Laws Provide For The Award of Attorneys' Fees**

An award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but...[does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179

23

F.3d 453, 471 (6th Cir. 1999).[12] There are two methods for determining whether a fee is reasonable: the percentage-of-the-fund method and the lodestar method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co*., 436 F. App'x 496, 498 (6th Cir. 2011). The Sixth Circuit has approved both methods. *Rawlings v. Prudential-Bache Prop., Inc*., 9 F.3d 513, 515–16 (6th Cir. 1993).

The percentage of the fund method is the "preferred method for common fund cases, where there is a single pool of money and each class member is entitled to a share (*i.e.*, a 'common fund')." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 788-89 (N.D. Ohio 2010). The "percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class." *Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-CV-119, 2020 WL 6498956, at *5–8 (S.D. Ohio Nov. 5, 2020) (citations omitted).

"In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Id.* And in this Court, where the fee award is made based on a common fund, "a lodestar cross-check is not required." *Id. See also, e.g., Clark*, 2022 WL 16554651, at *5 (lodestar cross check not mandatory); *Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-CV-6292, 2022 WL 501206, at *10 (S.D. Ohio Jan. 19, 2022) (explaining that "[t]his Court has consistently held that 1/3 of the settlement fund is a normal and reasonable attorneys' fee amount to request in wage and hour cases" and approving fee request without performing lodestar crosscheck); *see also, e.g., Fields*, 2022 WL 3223379 (same); *Satterly,* 2020

---

[12]     Under the FLSA and related state laws, an award of attorneys' fees is mandatory to a prevailing party. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) ("An award of attorney fees to a prevailing plaintiff under § 16(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge."); *see also* Ohio Rev. Code Ann. § 4111.10 ("Any employer who pays any employee less than wages to which the employee is entitled under [the overtime provisions in section 4111.03] is liable to the employee affected for … costs and reasonable attorney's fees as may be allowed by the court.").

WL 6536342, at *11 (same). Because the Settlement here has resulted in a common fund, from which attorneys' fees will be paid, Class Counsel respectfully submits that the percentage of the fund method should be employed by the Court to calculate the fair and reasonable amount of attorneys' fees to award to Class Counsel.

A district court also looks to the following factors in determining whether the fee is reasonable: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were undertaken on a contingent fee basis; (4) the value of the services on an hourly basis; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *See, e.g., Satterly*, 2020 WL 6536342, at *10 (describing the factors identified by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)). These factors support approval of the requested fee and are discussed below.

### 2. The Value of Benefits Rendered to the Class Supports the Requested Fee

Courts consistently acknowledge that the results achieved for the benefit of the class on whose behalf the action was brought is one of the most important factors to be considered in making a fee and expense award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (the "most critical factor is the degree of success obtained"). By all measures, the value of the benefit created for the Settlement Class is substantial and fully supports the requested fee.

Here, the Settlement Amount agreed upon represents a compromise amount that, for DA paid by Trinity Couriers totals more than approximately 4.6 times Plaintiffs' lowest calculations utilizing the legal and factual assumptions Defendants argued were reasonable and proper, and 6.1 times Plaintiffs' lowest calculations for Delivery Associates paid by Seven A Service. Schalman-Bergen Decl. ¶ 34. This will result in significant amounts of compensation being paid to the DAs.

*Id.* This is in line with other decisions in the Sixth Circuit and would benefit members of the class. *See Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (explaining that the average recovery in class actions is 7-11% of claimed damages). Under these circumstances, the Settlement creates an excellent benefit for members of the Settlement Class, and supports the requested fee award.

### 3. The Fee Requested Provides Adequate Incentive to Undertake this Representation for the Benefit of Others

"There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011); *see also In re Sulzer Hip Prosthesis & Knee Prosthesis Liability*, 268 F. Supp. 2d 907, 936 (N.D. Ohio 2003) ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling ... claimants to pool their claims and resources to achieve a result they could not obtain alone") (quoting *In re Telectronics*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001)). As such, "[a]dequate compensation is necessary to encourage attorneys to assume the risk of litigation in the public interest." *Connectivity Sys. Inc.*, 2011 WL 292008, at *14 (citations omitted).

Because society often places a premium when excellent results are achieved on behalf of those who otherwise would go unrepresented, Class Counsel's requested fee is appropriate. "Society's stake in rewarding attorneys who can produce such benefits in complex litigation such as in the case at bar counsels in favor of a generous fee . . . ." *In re: In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003) (citation omitted); *accord Satterly*, 2020 WL 6536342, at *11 ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own").

26

As further relevant here, the FLSA and the applicable state wage and hour laws are remedial statutes designed to protect the wages of workers. *See A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945) (recognizing the FLSA's objective, which is ensuring that every employee receives "a fair day's pay for a fair day's work"). Adequate compensation for attorneys who protect those rights by taking on such litigation furthers the remedial purpose of these statutes. Otherwise, highly-skilled counsel would shy away from risky and expensive litigation (like this case) and employees seeking to have their rights vindicated would have difficulty obtaining qualified counsel.

There can be no doubt the proposed settlement represents an excellent result for the Settlement Class. Public policy therefore supports approving Class Counsels' request for fees.

### 4. Class Counsel Undertook this Representation on a Contingent Basis

When Class Counsel agreed to undertake this litigation, they did so on a contingent basis. Schalman-Bergen Decl. ¶¶ 42-43. Class Counsel advanced all costs and, as the fee agreements provide, had there been no recovery, Class Counsel would not have been paid a fee or reimbursement of their expenses. *Id.* Class Counsel should be compensated for this risk. *Lonardo*, 706 F. Supp. 2d at 796 (fee award should account "for the substantial risk an attorney takes when he or she devotes substantial time and energy to a class action despite the fact that it will be uncompensated if the case does not settle and is dismissed."); *see also, e.g. Carr*, 2022 WL 501206, at *10 ("Class Counsel litigated this case on a wholly contingent basis with no guarantee of recovery.").

Here, Counsel are experienced class action attorneys with active and successful class action practices. Schalman-Bergen Decl. ¶¶ 41. Class Counsel took the case on a contingency basis, and invested time, effort, and money over a period of years with no absolutely no guarantee

of any recovery. *Id.* ¶¶ 42-43. The risks Class Counsel undertook were real, and the resources that Class Counsel, have dedicated to this action – hundreds of hours over the course of years – meant that such resources were not available to other cases. *Id.* Class Counsel's contingency risk, together with the excellent result that has been achieved on behalf of the Settlement Class, supports the requested fees and costs.

### 5. The Value of the Services on an Hourly Basis Supports the Fee Requested

As described above, in this Court, where the request is based on a common fund, including in wage and hour cases where the request does not exceed 1/3 of the common fund, a lodestar cross-check is not required. Here, Class Counsel request one third of the common fund, which "has almost uniformly" been awarded in FLSA collective actions in Ohio. *See Arp*, 2020 WL 6498956, at *5–8 (quoting *Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018)). "There is no reason in this case to deviate from the norm." *Id.*

In this matter, Class Counsel collectively have spent hundreds of hours prosecuting this matter, such that any lodestar cross-check (which is not required) would be well within the range of reasonableness as compared to the award. *See Clark*, 2022 WL 16554651, at *6 ("awards of common-fund attorney fees in amounts two or three-times greater than the lodestar have been found reasonable.") *Johnson v. Midwest Logistics Systems, Ltd.*, 2:11-cv-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) (concluding a lodestar multiplier of 2.25 was reasonable); *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a multiplier of 3.06 in an Employee Retirement Income Security Act case).[13]

---

[13] Class counsel has spent hundreds of hours pursuing this matter since 2019, as reflected by the history of this matter and as summarized in the Declaration of Sarah Schalman-Bergen. To

In addition, the Court may consider a law firm's expertise and work in other cases raising the same or similar issues, which may "substantially enhance the result Class Counsel is able to achieve." *Arp.*, 2020 WL 6498956, at *7-8. "This is true for several reasons, including that (1) successfully litigating a particular issue may improve the settlement prospects of cases raising the same issue, (2) developing expertise in a specific niche improves the firm's ability to effectively litigate within that niche, and (3) the work product from one case can be used in a case raising the same issue, resulting in value that is not adequately reflected in a lodestar calculation." *Id.*

Here Class Counsel are experienced litigators who have substantial experience in litigating matters involving last mile delivery drivers, including against the same Defendant at issue in this case. *See* Schalman-Bergen Decl. at ¶¶ 4-20, 41 (describing expertise). Class Counsel brought to bear their experience in this area in litigating and negotiating this settlement, which further supports the standard requested one third fee award.

> **6.** **The Complexity of the Litigation and the Class Counsel's Professional Skill and Efficiency in This Case Supports the Requested Fee**

Certifying any class to afford nationwide relief is a significant undertaking in terms of sophistication and risk. In this case, Plaintiffs and Defendants agree that there are numerous disputed issues of fact and law, including, specifically, whether Plaintiffs and the Settlement Class were exempt employees who were not entitled to overtime compensation. Defendant can contest the number of overtime hours worked, as well as joint employer liability. Because Defendant had potentially strong legal and factual defenses to Plaintiffs' claims, and because the parties were prepared to take the case to trial and potential appeals, an outcome of zero recovery for the Plaintiffs and for the Class remained possible. Class Counsel accepted these risks, and negotiated

---

the extent that the Court seeks additional information regarding Class Counsel's lodestar, Plaintiffs will provide a supplement.

a meaningful and substantial recovery. Accordingly, this factor also supports Class Counsel's fee request.

Here, Class Counsel includes attorneys with significant employment law as well as class and collective action experience. *See* Schalman-Bergen Decl. ¶¶ 4-20. Class Counsel assumed a very real risk in taking on this case. Class Counsel took the case on a contingency basis, and was prepared to invest time, effort, and money over a period of years with no absolutely no guarantee of any recovery. Schalman-Bergen Decl. ¶¶ 42-43.

The Settlement reached with Defendants, which involves complex provisions that are specific to Section 216(b)'s collective action provision of the FLSA and state wage and hour laws, is a reflection of Class Counsel's experience. This Settlement was reached after four mediation sessions and the substantial exchange and review of documents and data. Schalman-Bergen Decl. ¶¶ 25-29. The Settlement provides Plaintiffs and members of the Settlement Class with substantial benefits without having to wait for potentially many more years of drawn-out litigation. Accordingly, this factor favors the requested fee.

### 7. The Response of Settlement Class Members Supports The Requested Fee

Notice of the Settlement has now gone out to the Settlement Class Members. The Notice explicitly outlines the allocation of the Gross Settlement Fund, the minimum amount each Settlement Class Member can expect to receive, and provides instructions for objecting to or seeking exclusion from the Settlement. ***To date, none have submitted substantive objections or requests for exclusion from the Settlement, including to the request for fees***. Kirkpatrick Decl. ¶¶ 14-15. The lack of objections strongly supports the reasonableness of the fee award.

### 8. The Awards In Similar Cases Supports The Requested Fee

The requested fee is also consistent with awards in similar cases. As described above, Courts in this District consistently grant fee awards of 33% or greater in wage and hour settlements. *See, e.g.*, *Carr,* 2022 WL 501206 (explaining that "[t]his Court has consistently held that 1/3 of the settlement fund is a normal and reasonable attorneys' fee amount to request in wage and hour cases"); *see also, e.g., Fields*, 2022 WL 3223379 (one-third fee amount is "a normal fee amount in common fund settlement in wage and hour cases"); *Satterly,* 2020 WL 6536342, at *11 (same); *Osman v. Grube, Inc.*, No. 3:16-cv-00802, 2018 WL 2095172, at *3 (N.D. Ohio May 4, 2018) (approving the plaintiffs' request for one-third of the common settlement fund); *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) (approving 33% fee in $4 million settlement); *Kritzer v. Safelite Solutions, L.L.C.*, No. 2:10-cv-0729, 2012 WL 1945144 (S.D. Ohio May 30, 2012) (approving 52% fee in $455,000 settlement); *Rotuna v. W. Customer Mgmt. Group, L.L.C.*, No. 4:09-cv-1608, 2010 WL 2490989 (N.D. Ohio June 15, 2010) (approving 33% fee in $225,000 settlement); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010) (approving 33% fee; amount of settlement is sealed); and *Bessey v. Packerland Plainwell, Inc.*, No. 4:06-cv-95, 2007 WL3173972 (W.D. Mich. Oct. 26, 2007) (approving 33% fee in $669,000 settlement).

Here, as described above, Class Counsel's request for one-third of the Gross Settlement Fund is consistent with the norms of wage and hour class and collective litigation in this Circuit and across the country. Courts around the country have "routinely awarded one-third or more of the settlement fund as attorneys' fees in wage and hour cases." *See Henry v. Little Mint, Inc.*, No. 12-cv-3966, 2014 WL 2199427, *15 (S.D.N.Y. May 23, 2014) (noting that request for fees was "in line with decisions from across the country that have awarded one-third or more in wage-and-

hour settlements" and citing cases).  Accordingly, the fees approved in similar cases support the requested fee here.

### H. Class Counsel's Costs Should Be Approved

In addition to being entitled to reasonable attorneys' fees, the FLSA and applicable state wage and hour laws provide for the reimbursement of costs. *See* 29 U.S.C. § 216(b); OHIO REV. CODE ANN. § 4111.10; 43 P.S. § 333.113; 820 Ill. Comp. Stat. § 105/12. Here, Class Counsel's current costs total $ 11,724.32. Schalman-Bergen Decl. ¶¶ 44.  Class Counsel will continue to incur costs associated with this litigation, and in the event the total expenses ultimately exceed the $15,000 amount allocated for costs in the settlement, Class Counsel will not seek reimbursement of costs exceeding that cap.

As set forth in the Schalman-Bergen Decl., Class Counsel's costs include reasonable out-of-pocket expenditures. "[U]nder the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.,* 535 F.R.D. 508 (E.D. Mich. 2003).

The expenses are of the type typically billed by attorneys to paying clients in the marketplace and include such costs as mediation fees, court costs, copying fees, delivery costs, travel costs for counsel to attend mediation, and computerized research. *See* Schalman-Bergen Decl. ¶¶ 44. All of these expenses were reasonable and necessary for the successful prosecution of this case.

## V. CONCLUSION

Plaintiffs respectfully request that the Court grant this Unopposed Motion for Final Approval.

Dated: November 9, 2022                    Respectfully submitted,


                                           */s/ Sarah Schalman-Bergen*
                                           Sarah Schalman-Bergen
                                           Krysten Connon
                                           LICHTEN & LISS-RIORDAN, P.C.
                                           729 Boylston St., Suite 2000
                                           Boston, MA 02116
                                           Telephone: (617) 994-5800
                                           Facsimile: (617) 994-5801
                                           ssb@llrlaw.com

                                           Ryan Allen Hancock
                                           WILLIG, WILLIAMS & DAVIDSON
                                           1845 Walnut Street, 24th Floor
                                           Philadelphia, PA 19103
                                           Tel: (215) 656-3600
                                           Fax: (215) 567-2310
                                           rhancock@wwdlaw.com

                                           Alexandra Piazza
                                           Michaela Wallin
                                           BERGER MONTAGUE PC
                                           1818 Market Street, Suite 3600
                                           Philadelphia, PA 19103
                                           apiazza@bm.net
                                           mwallin@bm.net

                                           Drew Legando
                                           MERRIMAN LEGANDO WILLIAMS & KLANG,
                                           LLC (ID No. 0084209)
                                           1360 West 9th Street, Suite 200
                                           Cleveland, Ohio 44113
                                           Tel: (216) 552-9000
                                           Fax: (216) 522-9007

                                           *Attorneys for the Plaintiffs and the*
                                           *Proposed FLSA Collective and State Law Class*